**In re A.B., a Child.**

**No. 11–98–00167–CV.**

Court of Appeals of Texas,
Eastland.

April 28, 1999.

Rehearing Overruled July 22, 1999.

Robert D. Miller, Big Springs, for appellant.

Rick Hamby, Hamby & Hamby, Big Springs, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

## OPINION

McCALL, Justice.

Diana Brown Gonzales appeals the trial court's denial of her motion to enforce a child support order. Gonzales' motion requested that the trial court: (1) hold her ex-husband, Donald Brown, in contempt and confine him to the county jail; (2) enter a judgment for arrears in child support plus interest; and (3) award her attorney fees and court costs. The trial court denied all three requests. We reverse and remand.

### Background Facts

On September 9, 1996, the parties entered into an agreed order modifying conservatorship and child support. The order provided for Brown to begin making child support payments on October 1, 1996,[1] and to continue making them until, among other things:

> (1) the child reaches the age of 18 years, *provided that, if the child is fully enrolled in an accredited secondary school in a program leading toward a high school diploma, the periodic child-support payments shall continue to be due and paid until the end of the school year in which the child graduates.* (Emphasis added)

The parties' child, Amanda Brown, left school on her 18th birthday, November 9, 1997, and did not return until January 1998. The school expelled her on November 24, 1997, for non-attendance. Brown paid his obligation for November, but he made no payment for December or thereafter. After returning to school again in January 1998, Amanda missed another 13 days of school by February 25, 1998.

Her grade report for the first six-week period of 1998 showed that she had failing grades in three subjects and an "incom-

plete" in another. The remaining three grades were passing. Amanda testified as to her grades for the second six-week period in 1998, which were scheduled for release the day after the hearing in this case. She testified that she would receive a "50" in three classes, a "53" in one class, and a "68" in another class. The remaining two grades were passing. The record does not indicate whether Amanda could still pass the semester or receive credit for those classes. Amanda had attended one "Saturday school" and was scheduled to attend two more sessions in order to make up some of her absences. Gonzales testified that Amanda could graduate in May 1999, assuming her satisfactory completion of the remaining requirements; but the trial court found that there was no reasonable expectation of Amanda graduating by then.

### Issue on Appeal

Gonzales argues in her second issue that the trial court erred by concluding that Amanda was not "fully enrolled in an accredited secondary school in a program leading toward a high school diploma." Gonzales argues that we must construe "fully enrolled" to impose only a minimum requirement on Amanda; she asserts that Amanda need only appear on the rolls of the school district in order to be fully enrolled. Brown, on the other hand, urges us to adopt the position taken by the trial court in its third conclusion of law and to hold that "an habitual absentee from school and a casual scholar with habitual failing grades" who has little or no prospect of graduating cannot be fully enrolled.

### Standard of Review

▪ Because this case comes before us as a result of Gonzales' motion to enforce a child support order, we only have

---

1. The record shows that the order originally read "September 1, 1996," but "October" was interlineated for "September." Gonzales' petition for enforcement pleaded a failure to make a payment on September 1, 1996, but the trial court found that "[r]easonable minds could conclude" that payments should have begun in October instead of September. Gonzales does not challenge that finding here.

to determine whether Amanda was "fully enrolled" within the meaning of the child support order. We are not faced with the typical child support issue involving trial court discretion that is inherent in a motion to modify child support.[2] We construe agreed orders according to the rules governing construction of contracts. *McPherren v. McPherren*, 967 S.W.2d 485, 490 (Tex.App.—El Paso 1998, no pet'n). The court's primary concern when construing a written contract is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). If the wording of an instrument can be given a definite legal meaning, it is not ambiguous, and its construction is a matter of law. *Coker v. Coker, supra.* The provision of the child support order set forth above is based on TEX. FAM. CODE ANN. § 154.002 (Vernon 1996); thus, it can be given a definite legal meaning.

### *The Meaning of "Fully Enrolled"*

■ Two cases have construed the meaning of the statutory language on which the provision in the agreed order is based. The first, In the *Interest of Frost*, 815 S.W.2d 890 (Tex.App.—Amarillo 1991, no writ), held that a learning disabled student who was enrolled in a local college program, the successful completion of which would lead to a high school diploma, was fully enrolled in school. The second case, *Ewing v. Holt*, 835 S.W.2d 274 (Tex. App.—Fort Worth 1992, no writ), held that a child taking only one hour by correspondence was fully enrolled when the child only needed one hour to earn a diploma. The court declined, however, "to establish an arbitrary number of hours in which a student must be enlisted in order that she be deemed 'fully enrolled.'" *Ewing v. Holt*, supra at 275–76. Both cases are distinguishable from the present case.

*Frost* resolved whether a program outside the public high school could be considered an "accredited secondary school program" under the statute. *Ewing* addressed the meaning of "fully."

Both cases found a legislative intent behind the statute:

> [T]o require a father to aid in the support of his child, even if that child is over eighteen years of age, so long as that child was actively participating in studies which would lead to a high school diploma.

*In the Interest of Frost*, supra at 892; *Ewing v. Holt*, supra at 275. Both cases fix a minimum requirement to determine full enrollment. In both *Frost* and *Ewing*, the students involved were making a good faith effort toward obtaining their diplomas. Neither decision, however, rests on such a determination.

In the present case, neither party disputes that Amanda was enrolled in high school. The record indicates that school officials considered her to be an enrolled student. Although he expelled Amanda in the fall semester, the principal told her she could return in the spring.[3] The fact that Amanda was failing a majority of her classes does not determine whether she is fully enrolled. To hold otherwise would require courts to make a highly-subjective determination in each case. A student might fail despite his or her best efforts because he or she has a learning disability or other personal problems. One court might find full enrollment in facts under which another court would not. Under an "active participation" analysis, the trial court could relieve a parent of his or her support obligation if a student who turned 18 began to make failing grades, unless the parent seeking to enforce the obligation could prove that the decrease in grades was despite the student's best efforts. The plain language of the statute and of

---

2. TEX. FAM. CODE ANN. § 156.001 et seq. (Vernon 1996 & Supp.1999); see, e.g., *Cohen v. Sims*, 830 S.W.2d 285 (Tex.App.—Houston [14th Dist.] 1992, writ den'd).

3. A child is entitled to a free public education until he or she reaches the age of 21. TEX. EDUC. CODE ANN. § 25.001(a) (Vernon 1996).

the agreed order does not require Amanda to make a "good faith effort" to attend school and pass her classes. When she is enrolled in school and registered for classes, Amanda is "fully enrolled."

The purpose of the language in the agreed order, like the purpose of the statute, is to encourage Amanda to pursue her education. To achieve that end, we hold that Amanda is "fully enrolled in an accredited secondary school program" when her name appears on the rolls of the school district and when she is registered for the normal number of classes and has not been expelled. The trial court's findings of fact, unchallenged here, state that the school expelled Amanda for non-attendance in November 1997. Amanda did not return to school until January 1998. Thus, Gonzales could not recover the alleged arrears for December 1997 because Amanda was not fully enrolled in December. Gonzales can recover, however, the amounts which are due for months in which Amanda appeared on the rolls and was not expelled.

### This Court's Judgment

Because we sustain Gonzales' second issue, we need not consider her remaining issues. TEX.R.APP.P. 47.1.

We reverse the judgment of the trial court and remand the cause for a determination of the arrears due Gonzales and for the appropriate award of attorney fees.[4]

WRIGHT, Justice, dissenting.

The court's order and the statute upon which it is based provide for the extension of child support payments beyond a child's 18th birthday if that child is "fully enrolled in an accredited secondary school in a program leading toward a high school diploma." When is a child *"fully* enrolled?" The word "fully" modifies the word "enrolled." If the order read "enrolled," then there would be no doubt that an obligor would be under a legal duty to support a child over 18 who was simply on the rolls

of an accredited secondary school. With the addition of the word "fully," something more must be meant.

In both *Ewing* and *Frost,* cited by the majority, the courts found that the legislative intent behind this continued support provision was to require the payment of support "so long as [the] child was *actively participating* in studies which would lead to a high school diploma." (Emphasis added)

I would hold that a child is "fully enrolled" for purposes of continuing child support beyond the child's 18th birthday when that child is actively participating in studies which would lead to a high school diploma. Of necessity, this will require that the fact finder consider a number of things in light of the totality of the circumstances, such as: the number of courses or credits taken in relation to the number of courses or credits needed, attendance, attitude, participation, grades in relation to ability, honesty in effort, and overall performance. To use the words of the trial court, in order to be fully enrolled, one must be more than a "casual scholar." There are those experts available who can assist the trier of fact in making the determination. These types of issues have been entrusted to fact finders regularly, and I would entrust the determination of this issue to them.

There is some expressed concern for the case in which enforcement of extended support has resulted in a contempt order. Is the above definition of "fully enrolled" sufficiently specific to support an order of contempt for nonpayment of child support? While an order must be such that a person will know exactly what is required, it need not be "full of superfluous terms and specifications adequate to counter any flight of fancy a contemner may imagine in order to declare it vague." *Ex parte Blasingame,* 748 S.W.2d 444, 446 (Tex.1988)(quoting *Ex parte McManus,* 589 S.W.2d 790, 793 (Tex. Civ.App.—Dallas 1979, no writ)). The cir-

4. TEX. FAM. CODE ANN. § 157.167 (Vernon      1996).

cumstances of each case should be considered. In *Ex parte Hudson*, 917 S.W.2d 24 (Tex.1996), a landowner had been enjoined, among other things, to "maintain [his property] in a sightly condition." The Supreme Court found the language to be sufficiently specific to advise the contemner of the action required of him and to support a contempt judgment. The requirement that a child should be actively participating in order to be fully enrolled is no less specific. Of course, an obligor who believes that a condition for not paying child support has occurred might be well advised to first file a motion to modify the existing child support order before unilaterally ceasing the payment of support. Because the provision pertaining to the payment of support beyond a child's 18th birthday is statutorily permissible and not statutorily mandated, a trial court could modify a decree to eliminate the extended support payments. At any rate, in the case before us, appellee was not held in contempt, and the resolution of that issue must await another day.

The record before us supports the judgment of the trial court that A.B. was not fully enrolled. I would affirm that judgment.